**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CONSOLIDATED COMMUNICATIONS OF CALIFORNIA COMPANY F/K/A SUREWEST
TELEPHONE;
CONSOLIDATED COMMUNICATIONS OF FORT BEND COMPANY;
CONSOLIDATED COMMUNICATIONS OF ILLINOIS COMPANY F/K/A ILLINOIS
CONSOLIDATED TELEPHONE COMPANY;
CONSOLIDATED COMMUNICATIONS OF IOWA COMPANY F/K/A HEARTLAND
TELECOMMUNICATIONS COMPANY OF IOWA;
CONSOLIDATED COMMUNICATIONS OF MID-COMM. COMPANY F/K/A MID-
COMMUNICATIONS, INC.;
CONSOLIDATED COMMUNICATIONS OF MINNESOTA COMPANY F/K/A MANKATO
CITIZENS TELEPHONE COMPANY;
CONSOLIDATED COMMUNICATIONS OF PENNSYLVANIA COMPANY, LLC F/K/A
NORTH PITTSBURGH TELEPHONE COMPANY;
CONSOLIDATED COMMUNICATIONS OF TEXAS COMPANY;
IONEX COMMUNICATIONS NORTH, INC. D/B/A BIRCH COMMUNICATIONS;
IONEX COMMUNICATIONS, INC. D/B/A BIRCH COMMUNICATIONS;
IONEX COMMUNICATIONS, INC. D/B/A BIRCH COMMUNICATIONS OF THE
SOUTHWEST;
BIRCH TELECOM OF MISSOURI, INC. D/B/A BIRCH COMMUNICATION;
BIRCH TELECOM OF THE SOUTH, INC. D/B/A BIRCH COMMUNICATIONS OF THE
SOUTH;
BIRCH TELECOM OF THE SOUTH, INC. D/B/A BIRCH COMMUNICATIONS OF THE
SOUTHEAST;
BIRCH TELECOM OF THE WEST, INC. D/B/A BIRCH COMMUNICATIONS;
BIRCH TELECOM OF THE SOUTH, INC. D/B/A BIRCH TELECOM D/B/A BIRCH D/B/A
BIRCH COMMUNICATIONS;
BIRCH TELECOM OF THE GREAT LAKES, INC. D/B/A BIRCH COMMUNICATIONS;
BIRCH COMMUNICATIONS, INC.;
BIRCH COMMUNICATIONS OF THE NORTHEAST, INC. D/B/A BIRCH
COMMUNICATIONS;
BIRCH COMMUNICATIONS OF KENTUCKY, LLC;
CBEYOND COMMUNICATIONS, LLC; and
KANSAS FIBER NETWORK, LLC,

Plaintiffs,

v.

LEVEL 3 COMMUNICATIONS, LLC.,
WILTEL COMMUNICATIONS, LLC, and

GLOBAL CROSSING TELECOMMUNICATIONS, INC.,

Defendants.

---

## COMPLAINT

---

Plaintiffs Consolidated Communications of California Company *et al*., as listed in the above caption (jointly "Plaintiffs"), by and for their Complaint in the above-referenced proceeding, hereby state as follows against Defendants Level 3 Communications, LLC, WilTel Communications, LLC and/or Global Crossing Telecommunications, Inc., all subsidiaries of Level 3 Communications, Inc. (collectively "Level 3"), in regards to Level 3's failure to pay tariffed access charges for Plaintiffs' access services that Level 3 used to exchange "intraMTA" calls:

### PARTIES

1.      Consolidated Communications of California Company f/k/a SureWest Telephone is a corporation organized under the laws of the State of California and has its principal place of business in Mattoon, Illinois.

2.      Consolidated Communications of Fort Bend Company is a corporation organized under the laws of the State of Texas and has its principal place of business in Mattoon, Illinois.

3.      Consolidated Communications of Illinois Company f/k/a Illinois Consolidated Telephone Company is a corporation organized under the laws of the State of Illinois and has its principal place of business in Mattoon, Illinois.

4.      Consolidated Communications of Iowa Company f/k/a Heartland Telecommunications Company of Iowa is a corporation organized under the laws of the State of Minnesota and has its principal place of business in Mattoon, Illinois.

5.      Consolidated Communications of Mid-Comm. Company f/k/a Mid-Communications, Inc. is a corporation organized under the laws of the State of Minnesota and has its principal place of business in Mattoon, Illinois.

6.      Consolidated Communications of Minnesota Company f/k/a Mankato Citizens Telephone Company is a corporation organized under the laws of the State of Minnesota and has its principal place of business in Mattoon, Illinois.

7.      Consolidated Communications of Pennsylvania Company, LLC f/k/a North Pittsburgh Telephone Company is a limited liability company organized under the laws of the State of Delaware and has its principal place of business in Mattoon, Illinois.

8.      Consolidated Communications of Texas Company is a corporation organized under the laws of the State of Texas and has its principal place of business in Mattoon, Illinois.

9.      Ionex Communications North, Inc. d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

10.     Ionex Communications, Inc. d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

11.     Ionex Communications, Inc. d/b/a Birch Communications of the Southwest is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

12.     Birch Telecom of Missouri, Inc. d/b/a Birch Communication is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

13.     Birch Telecom of the South, Inc. d/b/a Birch Communications of the South is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

14.     Birch Telecom of the South, Inc. d/b/a Birch Communications of the Southeast is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

15.     Birch Telecom of the West, Inc. d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

16.     Birch Telecom of the South, Inc. d/b/a Birch Telecom d/b/a Birch d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

17.     Birch Telecom of the Great Lakes, Inc. d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

18.     Birch Communications, Inc. is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

19.     Birch Communications of the Northeast, Inc. d/b/a Birch Communications is a corporation organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

20.     Birch Communications of Kentucky, LLC is a limited liability company organized under the laws of the State of Georgia and has its principal place of business in Atlanta, Georgia.

21.     Cbeyond Communications, LLC is a limited liability company organized organized under the laws of the State of Delaware and has its principal place of business in Atlanta, Georgia.

22.     Kansas Fiber Network, LLC is a limited liability company organized under the laws of the State of Kansas and has its principal place of business in Wichita, Kansas.

23.     Defendant Level 3 Communications, LLC is a limited liability corporation organized under the laws of the State of Delaware and has its principal place of business in Broomfield, Colorado.

24.     Defendant WilTel Communications, LLC is a limited liability corporation organized under the laws of the State of Delaware and has its principal place of business in Broomfield, Colorado.

25.     Defendant Global Crossing Telecommunications, Inc. is a corporation organized under the laws of the State of Michigan and has its principal place of business in Broomfield, Colorado.

## JURISDICTION AND VENUE

26.     The Court has subject-matter jurisdiction over Count One pursuant to 28 U.S.C. § 1331 (federal question), because it turns on a question of federal law, and asserts a claim for breach of tariffs filed with the Federal Communications Commission ("FCC").  Similarly, this Court has federal-question subject-matter jurisdiction over Count Three, to the extent Count Three seeks a declaration regarding Level 3's compliance with the terms of the Plaintiffs' FCC-filed tariffs.

27.     The Court has subject-matter jurisdiction over Count Two pursuant to 28 U.S.C. § 1367 (supplemental), because it asserts claims for breach of state-filed tariffs that are so related

to the claims in Count One that they form part of the same case or controversy.  Similarly, this Court has supplemental subject-matter jurisdiction over Count Three, to the extent Count Three seeks a declaration regarding Level 3's compliance with the terms of the Plaintiffs' state-filed tariffs.

28.     The Court has personal jurisdiction over Level 3 pursuant to Colo. Rev. Stat. § 13-1-124.  Level 3's principal place of business is in Colorado, and thus Level 3 is subject to general personal jurisdiction in this Court.  In addition, some of Level 3's actions described herein took place in Colorado, and thus Level 3 is subject to specific personal jurisdiction in this Court.

29.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Level 3 is a resident of this judicial district within the meaning of  28 U.S.C. § 1391(c)(2), and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

## PLAINTIFFS' ACCESS SERVICES AND ACCESS CHARGES

30.     The Plaintiffs are local exchange carriers ("LECs") as defined under 47 U.S.C. § 153(32) that provide, among other things, telephone exchange services (i.e., local telephone services) and/or exchange access services in various states throughout the country.[1]

31.     As indicated, one of the standard services that the Plaintiffs provide is called "access services."  Access services are used by interexchange carriers ("IXCs") to provide long-

---

[1] Plaintiff Kansas Fiber Network, Inc. notes that it does not provide telephone exchange services (i.e., local telephone services). Naturally, the facts and legal assertions raised herein by Plaintiffs relate to and are limited to this particular dispute.

distance services.  Access services allow an IXC to route calls on its long-distance network to or from a LEC's local telephone network.[2]

32.      IXCs obtain the Plaintiffs' access services by ordering them, either actually (through submission of order requests) or constructively (through use of existing access service facilities).

33.      Access services are "interstate" if the points of origination and termination at the start of a call are in two different states.  Access services are "intrastate" if those two points are both within the same state.

34.      The Plaintiffs' interstate access services are governed by tariffs that the Plaintiffs lawfully have on file at the FCC (the "Federal Tariffs").  Similarly, the Plaintiffs' intrastate access services are governed by tariffs that Plaintiffs lawfully have on file with the public utility/service commissions within each state (the "State Commissions" and the "State Tariffs").

35.      The Plaintiffs' Federal and State Tariffs set forth the terms and conditions, including the applicable charges ("access charges"), for the Plaintiffs' access services.  These terms and conditions include, among other things, the process and due dates for payment of the Plaintiffs' access charges.  The Tariffs may also impose late charges or penalties on any payments that are not paid by the required due dates, including when IXCs withhold payments based on disputes that are later resolved against them. The Tariffs may also require customers to pay or otherwise indemnify the Plaintiffs for expenses such as attorneys' fees that result from the customers' actions, which here would include failure to pay required charges.

---

[2] "Local telephone network" as used herein is the telephone network used to provide local telephone services and/or exchange access services.

**LEVEL 3'S NONPAYMENT OF PLAINTIFFS' ACCESS CHARGES**

36.     Level 3 is an IXC.  Level 3 ordered and used the Plaintiffs' interstate and intrastate tariffed access services to exchange calls between Level 3's long-distance network and the Plaintiffs' local telephone networks.

37.     The Plaintiffs timely rendered bills, and will continue to do so, to Level 3 for Level 3's use of the Plaintiffs' access services ("access bills").  These access bills set forth the access charges required by the Plaintiffs' Federal and State Tariffs for those access services.

38.     Starting in approximately early 2014, Level 3 has not paid some of the access charges set forth in the Plaintiffs' access bills.  In the vernacular of the industry, Level 3 is "withholding" these payments.  The withheld payments include both interstate and intrastate access charges.

39.     Level 3 has asserted that it is withholding these payments because, according to Level 3, the calls to which the access charges apply are "intraMTA" calls.  Thus, Level 3 has unilaterally determined which access charges, it contends, relate to intraMTA calls.

40.     Further, Level 3 may have even withheld currently-due payments for charges unrelated to intraMTA calls to offset intraMTA-related charges in prior billing periods, a practice generally known as "self-help."

41.      IntraMTA calls, for purposes relevant here, are calls that generally traverse three different carriers' phone networks:  (1) a LEC's local telephone network on one end of the call; (2) a wireless carrier's network on the other end; and (3) an IXC's network in the middle; and the originating and terminating points of the call, at the time the call is initiated, are within the same

Major Trading Area ("MTA").[3]  MTAs are geographic areas, often including all or parts of multiple states, used by the FCC to establish licensing areas for certain cellphone services.

42.     Level 3 uses the Plaintiffs' access services when it exchanges intraMTA calls between its long-distance network and the local telephone network of one of the Plaintiffs.  That use of the Plaintiffs' access services subjects Level 3 to the terms and conditions of the Plaintiffs' Federal and State Tariffs, including the access charges, any applicable late payment charges or penalties and payment deadlines set forth in those Tariffs.

43.     By not paying these access charges by the deadlines set forth in the Plaintiffs' Federal and State Tariffs, Level 3 is also obligated to pay any applicable late payment charges or penalties set forth in those Federal and State Tariffs, at amounts that continue to accrue over time until the unpaid access charges are actually paid.

## COURT RULING THAT IXCS OWE ACCESS CHARGES FOR INTRAMTA CALLS

44.     Just like Level 3, other IXCs like Sprint and Verizon Business started withholding payments to certain of the Plaintiffs for access charges in 2014, where the charges relate to access services for calls they deem to be intraMTA calls.

45.     In 2014, Sprint and Verizon Business filed dozens of lawsuits against certain of the Plaintiffs and hundreds of other LECs concerning access charges and intraMTA calls.  The Judicial Panel on Multidistrict Litigation (the "Panel") transferred these cases to the Hon. Judge Sydney Fitzwater in the U.S. District Court for the Northern District of Texas in a multidistrict

---

[3] Although not affecting any issues in this lawsuit, the call path is slightly more complicated for small LECs that do not maintain direct connections with IXCs. These small LECs connect with nearby larger LECs (which maintain direct connections with IXCs) to establish "jointly provided" access arrangements to IXCs. In this situation, each LEC effectively provides a portion of the total access service to the IXC, and each LEC collects access charges from the IXC for its portion. *See, e.g.*, *In the Matter of Access Billing Requirements for Joint Serv. Provision*, Order, 1988 WL 488227, at *21, ¶ 88 (Com. Car. Bur. 1988).

litigation ("MDL") proceeding for consolidated pretrial activities. *In re IntraMTA Switched Access Charges Litig.*, No. 3:14-MD-2587-D (N. D. Tex.) (the "MDL Proceeding").

46.     On November 17, 2015 the Court issued a Memorandum Opinion and Order granting the Motion to Dismiss under Rule 12(b)(6) of the Plaintiffs and the other LEC defendants that are in the MDL Proceeding. *In re IntraMTA Switched Access Charges Litig.*, No. 3:14-MD-2587-D, 2015 WL 7252948 (N. D. Tex. Nov. 17, 2015) (the "MDL Order"). The Court held that, consistent with 47 C.F.R. §§ 69.2 & 69.5, IXCs are subject to LECs' access charges for the exchange of intraMTA calls. These regulations, which have been in effect and virtually unchanged since 1984, do not exempt intraMTA calls, as the Court held. Thus, IXCs must pay tariffed access charges for their exchange of intraMTA calls with LECs, like the Plaintiffs in this case.

47.     Sprint and Verizon argued that, in a significant order the FCC promulgated in 1996, the FCC exempted IXCs from paying LECs' access charges when IXCs use a LEC's access services to exchange intraMTA calls. The Court rejected that argument. In Section 251(g) of the Telecommunications Act of 1996 (codified at 47 U.S.C. § 251(g)), Congress stated that IXCs would continue to pay access charges to LECs unless the FCC "expressly superseded" its existing regulations (which include 47 C.F.R. §§ 69.2 & 69.5). In the 1996 order on which Sprint and Verizon relied, the FCC said that "nothing" in that order affected access charges paid by IXCs; and the FCC has never, at any time, expressly superseded 47 C.F.R. §§ 69.2 & 69.5 with respect to intraMTA calls. The Court similarly rejected all of the other authorities cited by Sprint and Verizon, finding none of them addressed access charges paid by IXCs to LECs for intraMTA calls.

48.     Level 3 is relying on the very same arguments that Sprint and Verizon Business lost in the MDL Proceeding.  Thus, the Court in the MDL Proceeding has rejected the basis of Level 3's withholding of payments for the Plaintiffs' access charges.

49.     Level 3 has never had a valid basis to refuse to pay the access charges required by the Plaintiffs' Federal and State Tariffs, for Level 3's use of the Plaintiffs' interstate and intrastate access services related to intraMTA calls.  Those charges are properly due and owed, as well as any late payment charges or penalties, attorneys' fees, court costs and/or other collection costs that may be assessed and recovered under the Tariffs.

50.     To the extent Level 3 will continue to withhold payments for access charges in the future relating to intraMTA calls, Level 3 similarly will have no basis for doing so.

**COUNT ONE.**
**BREACH OF FEDERAL TARIFFS**

51.     The Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 51 of this Complaint as if set forth in their entirety.

52.     Level 3 has failed to pay all access charges required by the Plaintiffs' Federal Tariffs for interstate access services that Level 3 ordered and used for what Level 3 purports are interstate, intraMTA calls.

53.     Because Level 3 failed to pay these access charges by the due date set forth by the Plaintiffs' Federal Tariffs, Level 3 may also owe any applicable late charges or penalties as set forth in the Federal Tariffs.

54.     Level 3 is liable to the Plaintiffs for the amount of unpaid access charges and any applicable unpaid late payment charges or penalties.  Plaintiffs' Tariffs also require Level 3 to reimburse Plaintiffs for attorneys' fees, court costs and/or other collection costs.

55.     The Court should enter judgment in the Plaintiffs' favor and against Level 3 in an amount to be proven at trial.

## COUNT TWO.
## BREACH OF STATE TARIFFS

56.     The Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 56 of this Complaint as if set forth in their entirety.

57.     Level 3 failed to pay all access charges required by the Plaintiffs' State Tariffs for intrastate access services that Level 3 ordered and used for what Level 3 purports are intrastate, intraMTA calls.

58.     Because Level 3 failed to pay these access charges by the due date set forth by the Plaintiffs' State Tariffs, Level 3 may also owe late payment charges or penalties as set forth in the State Tariffs.

59.     Pursuant to some state laws and certain Tariffs of the Plaintiffs, Level 3 also must reimburse the Plaintiffs for their attorneys' fees and costs relating to this lawsuit.

60.     Level 3 is liable to the Plaintiffs for the amount of unpaid access charges along with unpaid late payment charges or penalties, and/or the Plaintiffs' attorneys' fees, court costs and/or other collection costs as may be applicable under the Tariffs.

61.     The Court should enter judgment in the Plaintiffs' favor and against Level 3 in an amount to be proven at trial.

## COUNT THREE.
## DECLARATORY JUDGMENT

62.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 62 of this Complaint as if set forth in their entirety.

63.     A substantial controversy exists between the parties that is immediate and real because Level 3 continues to withhold access charges from the Plaintiffs, on the basis that the

- 12 -

access charges purportedly do not apply to the exchange of intraMTA calls between Level 3's long-distance network and the Plaintiffs' local telephone networks.  Based on its refusal to pay these fees since early 2014, Level 3 is likely to continue to refuse to pay these access charges into the future.

64.     The parties have adverse legal interests, as the Plaintiffs maintain that Level 3 owes these access charges, but Level 3 continues to withhold them.

65.     A judgment declaring that "Level 3 is obligated in the future to pay access charges, as set forth in the Plaintiffs' Federal and State Tariffs, for exchanging intraMTA calls between Level 3's long-distance network and the Plaintiffs' local telephone networks" will finalize this controversy between the parties and offer relief from the current dispute.

66.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should enter a declaration that Level 3 is obligated in the future to pay access charges, as set forth in the Plaintiffs' Federal and State Tariffs, for exchanging intraMTA calls between Level 3's long-distance network and the Plaintiffs' local telephone networks.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that the Court enter judgment in favor of the Plaintiffs and against Level 3 awarding:

1.     Damages (in an amount to be proven at trial);

2.     An award of any costs or fees to which the Plaintiffs may be entitled;

3.     A declaration that Level 3 is obligated in the future to pay access charges, as set forth in the Plaintiffs' Federal and State Tariffs, for exchanging intraMTA calls between Level 3's long-distance network and the Plaintiffs' local telephone networks; and

4.      Any other relief that the Court determines is just.


Dated:  March 4, 2016                              Respectfully submitted,

                                                   _/s/ Philip J.Macres_____
                                                   Philip J. Macres
                                                   KLEIN LAW GROUP PLLC
                                                   1250 Connecticut Avenue N.W.
                                                   Suite 200
                                                   Washington, D.C. 20036
                                                   Tel: 202-289-6956
                                                   Email: pmacres@kleinlawpllc.com

                                                   *Counsel for Plaintiffs*